IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) RICHARD LUCKETT,<br><br>      Plaintiff,<br><br>v.<br><br>(1) CALDWELL TRANSPORT COMPANY, LLC,<br>(2) TRAVIS ROBBINS,<br>(3) DAVID BEMIS<br><br>      Defendants. | Case No. CIV-17-934-PRW |

**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT**

In this action, Plaintiff Richard Luckett and 43 opt-in Plaintiffs asserted claims for unpaid minimum wage and overtime under the federal Fair Labor Standards Act ("FLSA"). The parties attended mediation on August 23, 2019 and reached a settlement to resolve this matter. The Settlement Agreement is attached hereto as Exhibit 1. The settlement proposes to pay a gross cash amount of $75,000 total. After accounting for the proposed service payment of Plaintiff Richard Luckett, and the requested attorney's fees and costs, opt-in plaintiffs would receive unique settlement shares based on the amount of time that they worked for Defendants, ranging from approximately $57.00 for those who worked for a month or less to $1,900.00 for those who worked for approximately three years. This provides an average share of $600 per person, and constitutes a significant

1

portion of the potential damages had all opt-in Plaintiffs proceeded to trial and succeeded on their claims. The settlement therefore properly considers the risks of continued litigation, including the potential that Defendants would succeed on the merits based on several of their affirmative defenses. The FLSA requires court-approval of any settlement to ensure that the resolution is a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." Pliego v. Los Arcos Mexican Rests., Inc., 313 F.R.D. 117, 127-125 (D. Colo. 2016) (citing Lynn's Food Stores. Inc. v. U.S., 679 F.2d 1350, 1354 (11th Cir. 1982)). The settlement here constitutes a reasonable and fair compromise of the parties' legitimate and bona fide dispute regarding application of the FLSA, and therefore Plaintiffs ask that the Court grant approval of the settlement and dismiss this action with prejudice.[1]

## I. Background

In this action, Plaintiff Richard Luckett and a group of 43 opt-in plaintiffs previously provided deliver services for Defendants' luggage delivery business during the relevant statutory period. Plaintiffs performed this work as "independent contractors" of Defendants. Plaintiffs alleged that they were "employees" of Defendants under the economic realities test of the FLSA, and sought damages for unpaid minimum wage and overtime. Defendants denied all allegations and take the position that Plaintiffs were properly classified at all times as non-employee independent contractors, and that they

---

[1] A proposed Order is attached hereto as Exhibit 2.

suffered no damages. Defendants also asserted a number of other affirmative defenses. See Dkt. 15 (Answer).

This action began in 2016 when Plaintiff Richard Luckett filed a proposed collective action arbitration demand, based on an arbitration agreement in his contract. An arbitrator was appointed and the parties conducted some litigation in that forum, which included attending a mediation with a private mediator to attempt an early resolution of this matter. The parties later agreed to litigate this action in court in the Western District of Oklahoma, and a proposed collective action complaint was filed here on August 30, 2017.

Plaintiffs moved for conditional certification of an FLSA Collective action on February 7, 2018. Defendants opposed and, after full briefing, Judge West allowed the motion on April 27, 2018. Plaintiffs' counsel then proceeded to distribute FLSA notice pursuant to the Court's instructions to 370 potential opt-in Plaintiffs. Forty-three individuals submitted an opt-in form to participate in this action (bringing the total number of plaintiffs to 44 including Luckett). The notice informed all individuals:

> If you decide to join this lawsuit and do opt in to the case, you will be bound by any order, ruling, judgment or settlement, if any, rendered in this case, whether it is favorable or unfavorable. Plaintiff Luckett, who initiated this action, will work with us to make decisions regarding the progress of this litigation, and we welcome your input into those decisions as well. You are agreeing to be bound by Plaintiff Luckett's decisions concerning settlement agreements and the fee agreement between Plaintiff Luckett and his attorneys."

Dkt. 34-1. Each individual also signed the opt-in form, agreeing that he or she would be bound by a negotiated settlement entered into by the collective action representative and their counsel. See Dkt. 34-2.

Plaintiffs later sought to amend their complaint to add additional causes of action under California law (where some opt-in Plaintiffs worked), as well as to add an additional corporate defendant. That motion was allowed in part as to the addition of the corporate defendant and denied in part as to the additional claims. See Dkt. 62.

The parties engaged in significant exchange of paper discovery. Defendants deposed Mr. Luckett on June 5, 2019. Plaintiffs then deposed Defendants David Bemis and Travis Robbins on July 9, 2019. As the Parties were preparing to raise several discovery disputes with the Court and take additional depositions, they agreed to a short stay of this matter so that they could attend a second mediation with well know mediator, R. Lyle Clemons, on August 23, 2019.

## II. Terms of the Proposed Settlement

Under the terms of the proposed settlement, Defendants shall pay a lump sum payment of $75,000 to resolve all claims asserted in this matter. Half of these funds will be paid on approximately December 31, 2019, 2019, with the remainder to be paid on or before June 1, 2020.

The proposed payments from the gross settlement fund are as follows:

| | |
|---|---|
| Settlement Share of All Opt-in Plaintiffs | $26,288.57 |
| Attorney's Fees (33% of the common fund) | $25,000.00 |
| Litigation Costs | $14,711.43 |

4

| | |
|---|---|
| Service Payment of Lead Plaintiff | $6,000.00 |
| Individual Settlement Payment of James Gleeson | $3,000.00 |
| **TOTAL SETTLEMENT FUND** | **$75,000** |

All of these funds will be paid to opt-in Plaintiffs and no funds will revert to Defendants.

In exchange for their settlement payment, opt-in Plaintiffs will release all FLSA claims and all wage and hour claims that were brought or could have been brought in this Action.

The Settlement Agreement provides an excellent settlement for opt-in Plaintiffs with respect to their claims for unpaid minimum wage and overtime arising from Defendants' alleged improper wage and hour practices at issue given the possibility that the litigation, if not settled now, would result in no recovery for Collective Members or a recovery that was much less favorable.

All opt-in Plaintiffs received comprehensive notice of their rights prior to joining this action, and submitted an opt-in form to affirmatively join this case and assert FLSA claims against Defendants. All agreed to retain the undersigned counsel, agreed to the contingency fee arrangement, and agreed to be bound by any settlement reached on their behalf or to be bound by any judgment in this Action. Counsel for the opt-in Plaintiffs has also communicated information regarding the settlement to most of their clients.

Counsel has received favorable responses and has not received any negative response to that communication. See Thomson Decl. at ¶ 10.

The settlement shares to class members will be calculated based on the number of weeks that they worked for Defendants, so that an individual who worked for Defendants for a year (for example) will receive more than an individual who worked for just one month; this method closely approximates the potential damages that opt-in plaintiffs could have recovered relative to one another. Plaintiffs has determined the "workweeks" of each opt-in Plaintiff based on data that was provided by Defendants in discovery, supplemented by other methods such as self-reporting or review of other relevant documents where necessary. The full list of settlement shares of all opt-in Plaintiffs is included in the Settlement Agreement, attached hereto as Exhibit 1. As set forth therein, many class members will receive more than $1,000 for settlement of their claims asserted in this case. The minimum share is $57.00 for an individual who worked for only less than one month, and the maximum share is approximately $1,900 for an individual who worked for Defendants for three years.

Plaintiffs' counsel shall perform all administrative tasks related to the settlement. This includes calculating all settlement shares, cutting all checks to opt-in plaintiffs in a first distribution and a second distribution, mailing of all settlement checks to opt-in plaintiffs, and re-mailing those that are undeliverable where an updated address is located.

For their efforts in this Action, the undersigned counsel seeks an award of attorney's fees of 33% of the common fund that was recovered. As discussed in greater

detail below, this amount is consistent with the fee awards in similar cases and exceeds counsel's lodestar.  Counsel also seeks an award of actual out-of-pocket litigation costs of $14,711.43.  These costs were incurred in paying upfront costs for two mediation sessions, travel to mediation, costs related to court reporters, transcripts, travel for depositions, and other arbitration and court filing fees.

The proposed service payment of $6,000 is reasonable due to the significant efforts of the lead Plaintiff, Richard Luckett.  Luckett took this case on individually in order to obtain relief for his fellow delivery drivers.  He attended the first mediation session in-person, attended a full day deposition, responded to written discovery, assisted via telephone in the second mediation session, and provided invaluable assistance to Plaintiffs' counsel in prosecution of this Action.  If not for Luckett's efforts, the opt-in plaintiffs would never have received notice of this action and never would have recovered anything.

Finally, the settlement provides for an individual settlement payment of $3,000 to opt-in James Greeson because as part of the negotiated settlement, he has agreed to terminate his work relationship with Defendants.

As discussed in greater detail below, the terms of the settlement are fair and constitute a reasonable settlement of a hard-fought case that lasted more than three years, and the settlement should be approved.

### III.   Process for Settlement Approval

Courts around the country have held that where FLSA notice was already distributed, and the opt-in period has now closed, a settlement of the matter can be undertaken in a "one step" process whereby the Plaintiffs move for approval of the settlement in a single motion, unlike the rounds of preliminary approval, class settlement notice, and final approval that is used in approving settlements under Fed. R. Civ. P 23(e).  See, e.g., Koszyk v. Country Fin. a/k/a/ CC Srvcs., Inc.,  2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016) ("A one-step settlement approval process is appropriate"); Lauture v. A.C. Moore Arts & Crafts, Inc., 2017 WL 6460244, at *1 (D. Mass. June 8, 2017) ("A one-step approval process is appropriate in FLSA settlements that do not include proposed Federal Rule of Civil Procedure 23 class releases."); Bozak v. Fedex Ground Package Sys., Inc., No. 11 Civ. 738, 2014 WL 3778211, at *2 (D. Conn. July 31, 2014); Campbell v. Advantage Sales & Mktg. LLC, 2012 WL 1424417, at *1 (S.D. Ind. Apr. 24, 2012); Aros v. United Rentals, Inc., 2012 WL 3060470, at *2 (D. Conn. July 26, 2012); Powell v. Lakeside Behavioral Healthcare, Inc., 2011 WL 585516, at *1 (M.D. Fla. Nov. 22, 2011.).  Plaintiffs here seek one-step approval of the settlement described herein because it is a fair and reasonable compromise of a bona fide dispute under the FLSA.

## IV. The Settlement Is a Fair and Reasonable Resolution of a Bona Fide Dispute

The standard for approval of an action arising under the FLSA requires only a determination the proposed settlement is a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." Pliego v. Los Arcos Mexican Rests., Inc., 313 F.R.D. 117, 127-125 (D. Colo. 2016) (citing Lynn's Food Stores. Inc. v. U.S., 679 F.2d 1350, 1354 (11th Cir. 1982)).  To approve an FLSA settlement, the Court must determine whether: (1) the litigation involves a *bona fide* dispute; (2) the proposed settlement is fair and equitable to all parties; and (3) any enhancement payments are fair and reasonable. Swartz v. D-J Eng'g, Inc., 2016 WL 633872, at *3 (D. Kan. Feb. 17, 2016)

### A. This Action Presented a Bona Fide Dispute

Under Lynn's Food Stores, a district court may find that a proposed settlement agreement resolves a *bona fide* dispute when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute." 679 F.2d at 1354. "Parties requesting approval of an FLSA settlement must provide the Court with sufficient information to determine whether a bona fide dispute exists", such as, among others, a description of the dispute, plaintiff's justification for the unpaid wages, and the employer's justification for disputing the overtime wages. Solis v. Top Brass, Inc., No. 14-cv-00219-KMT, 2014 WL 4357486, at *2 (D. Colo. Sept. 3, 2014) (citing Baker, 2014 WL 700096, at *1).

9

Here, the central dispute is whether opt-in Plaintiffs were "employees" who were covered by the FLSA and entitled to its minimum wage and overtime protections, or whether Defendants properly classified all opt-in Plaintiffs as non-employee "independent contractors" who were not covered by the statute. Courts seeking to ascertain the correct employment status of individuals alleging misclassification apply the economic realities test of the FLSA, consisting of the following factors:

> (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business.

Baker v. Flint Eng'g & Const. Co., 137 F.3d 1436, 1440 (10th Cir. 1998). Though Plaintiffs had argued that a balancing and consideration of these factors demonstrated that they were economically dependent on Caldwell, Defendants took the position that they were independent because they could choose when and how much to work, and drivers had complete control over their own profits and earnings. See, e.g., Dkt. 28 at 1-10 (portions of Defendants' Opposition to Plaintiffs' motion for conditional certification). A balancing of the economic realities factors often presents triable issues that cannot be resolved by dispositive motion. See, e.g., Buenaventura v. Champion Drywall, Inc. of Nevada, 2013 WL 1315123, at *6 (D. Nev. Mar. 27, 2013) (denying motion for summary judgment on "employee status" and observing that triable issue of fact over whether defendants exercised "control over the economic realities of the plaintiffs' employment"). Application of the economic realities test based on the facts of this case certainly presented a bona fide dispute and presented the risk that if opt-in

10

Plaintiffs were not successful at trial on this issue, they would recover nothing. Even if opt-in Plaintiffs had been successful in establishing their status as "employees" under the FLSA, they would have faced additional challenges in proving their damages.

### B. The Settlement is Fair and Reasonable

Because the Tenth Circuit Court of Appeals has not definitively set out FLSA-specific criteria to use when assessing the fairness and reasonableness of a proposed settlement agreement, district courts have looked to the same factors used in evaluating the fairness of class action settlements under Fed. R. Civ. P. 23. See Baker, 2014 WL 700096, at *2 (citing Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1188 (10th Cir. 2002)). These factors are: 1) whether the parties fairly and honestly negotiated the settlement; 2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; 3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and 4) the judgment of the parties that the settlement is fair and reasonable. Baker, 2014 WL 700096, at *2. Once the settlement is found to be fair and reasonable, the Court also determines whether the agreement furthers the purpose of the FLSA. See Solis, 2014 WL 4357486, at *3 ("To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales."); Swartz, 2016 WL 633872 at *4; Baker v. Vail Resorts Mgmt. Co., 2014 WL 700096, *2 (D. Colo. Feb. 24, 2014).

Here, the Gross Settlement Amount provides opt-in Plaintiffs with the recovery of

alleged unpaid minimum wage and overtime damages, and it was carefully negotiated based on factual discovery, a substantial investigation by Plaintiffs' Counsel, and the review and analysis of information and payroll data produced by Defendants prior to mediation. Prior to mediation, Plaintiffs' counsel calculated that the potential minimum wage damages were approximately $100,000, and that the potential overtime damages were approximately $48,000. The $75,000 recovery is approximately 50% of this amount, which is a fair resolution of the case given the bona fide disputes regarding employee status and proof of potential damages. This recovery is in the range that is often approved in similar cases, and constitutes a significant recovery for the class. See, e.g., Norris v. Lake Conway Landscaping of Orlando, Inc., 2015 WL 3632314, at *2 (M.D. Fla. June 10, 2015) (holding that a compromise for 41.6% of the total damages initially claimed by plaintiff was reasonable due to "bona fide disputes" concerning FLSA provisions, such as the applicability of the § 213(b)(3) exemption); DeGraff v. SMA Behavioral Health Servs., Inc., 945 F. Supp. 2d 1324, 1328 (M.D. Fla. 2013) (approving FLSA settlement of $5,000, plus $3,333.33 in attorneys' fees, for a plaintiff who had estimated her damages at $88,000, due to bona fide disputes); Tobar v. Khan, 2011 WL 564588, at *2 (M.D. Fla. Feb. 1, 2011), *report and recommendation adopted,* 2011 WL 397898 (M.D. Fla. Feb. 2, 2011) (approving an FLSA settlement representing approximately one-fifth of the plaintiff's asserted damages); Glass v. UBS Fin. Serv., Inc., 2007 WL 2216862, at *4 (N.D. Cal. Jan. 26, 2007) (approving settlement in wage Rule 23 class action for 25 to 35% of the claimed damages).

The proposed allocation formula is also fair and reasonable and should be approved.

See Lucas v. Kmart Corp., 234 F.R.D. 688, 695 (D. Colo. 2006) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel.") (quoting In re Am. Bank Note Holographics, Inc., 127 F. Supp. 2d 418, 429–30 (S.D.N.Y.2 001) (citations omitted)); see also Chaverria v. New York Airport Serv., LLC, 875 F. Supp. 2d. 164 (E.D.N.Y. 2012) ("As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.") (citations omitted). Under the proposed allocation formula, each opt-in Plaintiffs will receive a settlement share based on their estimated damages, using their number of workweeks as a proxy so that those who worked more for Defendants will receive larger shares than those who worked for Defendants for only a few weeks. Given that the central claim in the case for unpaid minimum wage damages, this process is a fair approximation of the actual damages of each opt-in plaintiffs relative to one another.

In comparison to the proposed Settlement, proceeding with litigation would have required a substantial amount of time to yield a benefit to the opt-in Plaintiffs, which is an indication that the proposed settlement is fair, reasonable, and adequate. See Pliego v. Los Arcos Mexican Rests., Inc., 313 F.R.D. 117, 130-31 (D. Colo. 2016) ("[G]iven the inherent risks associated with further litigation, the Class Members may recover less should the case proceed through trial. Thus, the proposed settlement at this stage far outweighs any potential benefits, if any at all, of further litigation."). Here, the complexity and expense of proceeding with litigation is clearly outweighed by the efficiency and financial relief presented by the Settlement Agreement.

13

Plaintiffs' counsel are experienced and respected wage-and-hour attorneys with substantial experience litigating class and collective actions. See, e.g., Scovil v. FedEx Ground Package Sys., Inc., 886 F. Supp. 2d 45, 47 (D. Me. 2012) ("Harold Lichten of the firm of Lichten & Liss–Riordan, P.C. has extensive experience in class action litigation, employment litigation…."). In counsel's view, the $75,000 settlement is a fair settlement that offers significant benefit to the opt-in Plaintiffs and properly accounts for the time, expense, and risk of continued litigation.

Finally, the Settlement Agreement contains no provisions that are contrary to the purposes of the FLSA or that would frustrate the implementation of the FLSA in the workplace. For example, the parties are not keeping the Settlement Agreement a secret. See, e.g., Alewel v. Dex One Serv., Inc., 2013 WL 6858504, at *2 (D. Kan. Dec. 30, 2013) ("the public's interest in understanding disputes and trusting courts as fairly and honestly run outweighs any interest of the parties in keeping confidential the amount of settlement.") (quoting Gambrell v. Weber Carpet, Inc., 2011 WL 3518172, at *1-2 (D. Kan. Aug. 11, 2011)) (internal quotations omitted); McCaffrey v. Mortg. Sources, Corp., 2010 WL 4024065 at *2 (D. Kan. Oct. 13, 2010) (the Court not allowing the parties to file the settlement under seal as the public interest in understanding the disputes and ensuring the Courts are honest and transparent outweighs the parties' interest in keeping the settlement confidential). The Settlement also furthers the purposes of the FLSA by providing opt-in Plaintiffs with substantial recovery for their alleged unpaid wages, that they may have otherwise been unable to recover.

**V.     The Requested Attorney's Fees are Reasonable and Should be Approved**

The FLSA also requires that a settlement agreement include an award of reasonable fees. McCaffrey v. Mortg. Sources, Corp., 2011 WL 32436, at *2 (D. Kan. Jan. 5, 2011). "In common fund cases, utilizing the percentage method to calculate attorney fees awards is the standard." Whittington v. Taco Bell of Am., Inc., 2013 WL 6022972, at *5 (D. Colo. Nov. 13, 2013) (citing Gottlieb v. Barry, 43 F.3d 474, 482–83 (10th Cir.1994)).  In determining the reasonableness of the fee, courts consider the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by [the] client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Here, Plaintiffs seek 33% of the common fund, which is far less than their actual lodestar fees.  As set forth in the accompanying Declaration, counsel worked more than 200 hours on this litigation over the past three years.  See Thomson Declaration at ¶ 7, attached hereto as Exhibit 3. This included initial investigation of the case. full written discovery, conducting two depositions, moving for conditional certification, administering FLSA notice, briefing issues related to the amended complaint, defending Plaintiff Luckett's deposition, analyzing payroll data prior to two mediation sessions, and attendance at mediation.  Even using a blended rate of $350 per hour for all counsel who worked on

15

this matter, the lodestar would be $70,000, which far exceeds the requested 33% of the fund ($25,000). This request for a percentage of the fund is consistent with counsel's contingency fee agreement with Plaintiff Luckett, which permitted counsel up to one-third of any recovery. See Thomson Decl. at ¶ 5. Due to this contingency agreement, there is "the possibility in a case of this kind that the lawyer, having given up other cases in order to actively pursue this case, will actually recover no payment for his time and efforts." Whittington v. Taco Bell of Am., Inc., 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013). Based on similar considerations, courts have often approved attorney's fees award in FLSA cases and Rule 23 class actions of one third of the common fund. See McNeely v. Nat'l Mobile Health Care, LLC, 2008 WL 4816510, at *15 (W.D. Okla. Oct. 27, 2008) ("The requested one-third fee is customary…."; Cimarron Pipeline Const., Inc. v. Nat'l Council On Comp. Ins., 1993 U.S. Dist. LEXIS 19969 at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."). Based on the inherent risks and the skill and experience of the Plaintiffs' counsel, the requested fee is beyond reasonable in this case.

### VI.    The Proposed Service Payment is Justified and Should be Approved

Pursuant to the Settlement Agreement, lead Plaintiff Richard Luckett will receive a service award in the amount of $6,000 for his efforts in bringing and prosecuting this matter and, in addition, for his broader general releases against Defendants.

Courts routinely approve incentive awards to compensate named plaintiffs for

"personal risk incurred or additional effort and expertise provided for the benefit of the class." UFCW Local 880-Retail Food Emp'rs Joint Pension Fund v. Newmont Min. Corp., 352 Fed. Appx. 232, 235 (10th Cir. 2009).  It is particularly appropriate to compensate named representative plaintiffs with service awards where they have actively assisted plaintiffs' counsel in their prosecution of the litigation for the benefit of a class. Young v. Tri Cnty. Sec. Agency, Inc., 2014 WL 1806881, at *1, 8 (E.D. Pa. May 7, 2014) (approving incentive award for named representative in action alleging violations of the FLSA and PMWA, where named plaintiff released all waivable claims arising out of employment and made significant contributions to the litigation).

Here, Plaintiff Luckett worked closely with Plaintiffs' Counsel; he provided background information about his employment, about Defendants' policies and practices, and about the allegations in this lawsuit; he discussed case strategy; he attended the first mediation session in-person; Luckett responded to written discovery; Luckett also attended a full day deposition that required out-of-state travel.  He is also providing a broader release of claims.  Plaintiff Luckett took the significant risk of representing the interests of his fellow employees, including risking his reputation in the community and in his field of employment to participate in this case on behalf of the collective. See Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (noting that service awards are especially appropriate in employment litigation where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has for the benefit of the class as a whole, undertaken the risk of adverse

17

actions by the employer or co-workers.").[2]

The additional payment requested in this case is also in line with those approved in wage and hour collective and class actions in the Tenth Circuit. See, e.g., Tuten, 41 F. Supp. 3d at 1010 (approving service award of $15,000 to the named plaintiff); McNeely v. Nat'l Mobile Health Care, LLC, 2008 WL 4816510, at *16 (W.D. Okla. Oct. 27, 2008) (approving service award of $15,000 to the named plaintiff); see also Raniere v. Citigroup, Inc., 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (granting service awards of $20,000, $15,000 and $7,500 to named plaintiffs); Creed v. Benco Dental Supply Co., 2013 WL 5276109, at *7 (M.D. Pa. Sept. 17, 2013) (approving service award of $15,000 to named plaintiff as he "took [ ] risks for what would only be at most a couple thousand dollar recovery if he were to be treated the same as all the unnamed class members.").

For these reasons, the service award payment of $6,000 to Plaintiff Luckett should be approved as fair and reasonable.

## VII.  To the Extent "Final" Certification is Required, the Case Satisfies the Requirements of Final Approval

Collective action litigation under the FLSA often proceeds with two stages of certification; a first "conditional certification" stage, and then later a motion to decertify filed by a defendant. There is a substantial body of caselaw holding that there is no

---

[2] See also Sand v. Greenberg, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation"); Craig v. Rite Aid Corp., 2013 WL 84928, at *13 (M.D. Pa. Jan. 7, 2013), *appeal dismissed* (3d Cir. Feb. 20, 2013) ("[N]amed plaintiffs in FLSA or state wage and hour claims are often retaliated against in the industry as a result of their obvious participation in such litigation.").

requirement of "final certification" prior to obtaining approval of an FLSA settlement on behalf of a conditionally certified collective. See In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III), 18 F. Supp. 3d 844, 853 (S.D. Tex. 2014) ("[C]ourts in the Fifth Circuit have never imposed [a final certification requirement in FLSA cases] and the court is not persuaded that it is necessary or appropriate…."); see generally O'Connor v. Oakhurst Dairy, 2015 WL 2452678, at *4 (D. Me. May 22, 2015) ("The due process safeguard built into Rule 23 class actions are not necessary in the FLSA collective action context."). However, to the extent the Court wishes to grant "final certification" of the FLSA collective for settlement purposes only, the collective here meets the requirements for "final" certification under 29 U.S.C. 216(b). The opt-in Plaintiffs are similarly situated and allege that they were harmed by a company-wide policy or practice that violated the FLSA, namely Defendants' classification of all opt-in Plaintiffs as independent contractors. See, e.g., Geter v. Galardi S. Enterprises, Inc., 2015 WL 2384068, at *11 (S.D. Fla. May 19, 2015) (denying motion for decertification of group of exotic dancers pursuing FLSA claims in collective action where claims was based on misclassification as independent contractors).[3]

---

[3] Pursuant to the terms of the Settlement Agreement, Defendants reserve their rights to contest certification of the collective action in the event that the settlement approval is denied; however, for settlement purposes only, Defendants assent to "final certification" of the collective.

Respectfully submitted,

s/ *Matthew Thomson*

Harold L. Lichten
Matthew Thomson
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
hlichten@llrlaw.com
mthomson@llrlaw.com

AND

s/ *Jeff Taylor*

Jeff Taylor
The Offices at Deep Fork Creek
5613 N. Classen Blvd.
Oklahoma City, OK 73118
taylorjeff@mac.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of October, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to all individuals registered through the Court's ECF system.

/s/ *Matthew Thomson*